## SCOTT v. HAVERSTRAW CLAY & BRICK CO.

*(Supreme Court, General Term, Second Department.  December 14, 1891.)*

1. LANDLORD AND TENANT—PRESERVATION OF PROPERTY—CONSTRUCTION OF LEASE.
    A lessee of a brick-yard covenanted that it would at its own cost maintain and keep up a proper and substantial brick-yard, keep all the buildings in good repair, and leave the same at the end of the term in good order and condition. It was stated to be a part of the consideration that the lessee should keep the property from deterioration. An extension of the lease contained the same covenants, and a further agreement that the lessee should supply the yard with a steam-engine, and necessary fixtures and machinery therefor, as a part of the consideration of the extension. *Held,* that the lessee was bound to maintain a yard covering the whole premises, and leave the same in a fully-equipped condition, and to erect and leave on the premises an engine with suitable buildings, machinery, and fixtures sufficient to run the yard, and that the lessee did not discharge its contract by simply leaving the premises in good condition.

2. SAME—MEASURE OF DAMAGES.
    The measure of damages to the lessor, in such case, was properly taken to be the reasonable cost and expense of replacing everything which the lessee undertook but failed to leave on the premises.

Appeal from judgment on report of referee.

Action by Caroline L. G. Scott against the Haverstraw Clay & Brick Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Calvin Frost,* for appellant. *Alonzo Wheeler,* (*E. A. Brewster,* of counsel,) for respondent.

DYKMAN, J. This is an appeal from a judgment entered upon the report of a referee. The action was brought to recover damages for the breach of covenants contained in two leases of certain brick-yard premises located in Haverstraw, in Rockland county. The first lease was dated on the 23d day of February, 1878, and was made by Caroline Louisa Garner Scott, wife of James Scott, and William Henry Garner, to the Haverstraw Clay & Brick Company, a domestic corporation organized under the laws of the state of New York, and demised brick-yards and premises particularly described for five years from the 1st day of April, 1878, for the annual rent of $1,200, payable quarterly. The defendant in that lease covenanted and agreed to use and occupy the premises for the purpose of the business of brick-making from clay and sand to be procured elsewhere than on the premises, and that it would not use any clay, sand, or other material for making brick procured from or on any part of the demised premises; and further, that it would, at its own proper cost and expense, maintain and keep up a proper and substantial brick-yard upon the whole of the demised premises; that it would keep and preserve all the buildings, sheds, docks, pits, and other improvements then on the premises, or which thereafter might be erected, enlarged, or altered, in good repair and condition, at its own cost and expense, and at the expiration of the term or other sooner determination of the lease leave the premises with all the docks, buildings, pits, improvements, and fixtures in good order and condition; the whole of which, at the determination of the lease from whatever cause, was to become the sole and absolute property of the parties of the first part, and at such time to be surrendered and yielded up to the parties of the first part, or their legal representatives, in good order and condition. The defendant further covenanted that it would not suffer or allow any bats from said yard or vessel, or any other material, to be thrown in the Hudson river near the bulk-heads or docks, so as in any way to obstruct or interfere with the navigation or free use thereof, which might be connected with or belong to the demised premises, so as to make the waters of the river in any degree more shallow or less deep. There was a further covenant that the defendant, on the determination of the lease, would leave the docks, yards, and grounds in good, smooth, regular surface and condi-

tion, and in good repair, and it was stated to be a part of the consideration of the lease that the party of the second part should keep the property from deterioration, and leave on the same all additions and improvements as aforesaid. It was charged in the complaint in this action that under the terms of this first lease the defendant entered into the possession and occupation of the premises about the 1st day of April, 1878, and, in pursuance of the said lease and to the extension mentioned in the complaint continued in possession until the 1st day of April, 1888. It was alleged also that soon after the execution and delivery of the lease, and after the defendants had entered into possession of the premises, the title of the premises became wholly vested in the plaintiff in this action, Caroline L. G. Scott. It was further alleged that, after the plaintiff so became the sole owner of the premises, she executed and delivered to the defendant, and the defendant accepted from her, another instrument in writing, purporting and intending to be an extension of the terms of the said lease, for the purposes and upon the conditions mentioned in the first lease. In this second instrument, called a "lease," and also an "extension of the first lease," the plaintiff demised to the defendant the same premises, with the buildings and improvements thereon, mentioned in the first lease, for another term of five years, to commence on the 1st day of April, 1883, and to expire on the 1st day of April, 1888, unless sooner determined, at the yearly rental of $1,200, payable quarterly; and in this last instrument the defendant covenanted and agreed to pay that rent, and also that it would erect, put upon, and maintain on the premises a steam-engine, for the manufacture of brick thereon, of sufficient horse-power and capacity for the purpose thereof, with suitable buildings and fixtures and all machinery required therefor, and that at the expiration of the last term it would leave the buildings and every part thereof on the premises in good order and condition, the whole of them to be and become the absolute property of the plaintiff; such engine, fixtures, building, and machinery being a part consideration for the granting of the term thereby demised. And it was further covenanted and agreed by the defendant that all the covenants, agreements, and conditions in the first lease on its part made and agreed should be applicable to and be a part of the last lease in every respect, with like force and effect as if recited in the last lease, and that it would keep, observe, and perform the same with reference to the term thereby demised, as if they were expressed in the first lease. · It was alleged in the complaint that when the first lease went into effect, and the defendant entered into possession of the premises, there were thereon, sheds, docks, pits, boilers, and engines and appurtenances and fixtures, and other improvements, belonging to the plaintiff, and that during the occupation of the premises by the defendant certain buildings, sheds, additions, improvements, and fixtures were erected and put upon the premises by the defendant, all of which, by the terms of the lease, became the absolute property of the plaintiff. Then it was alleged in the complaint that, in violation of the covenants of the lease and the extension thereof, the defendant failed to keep up and maintain a proper and substantial brick-yard upon the whole of the said demised premises, but caused or permitted the same premises, and the docks, sheds, buildings, machinery, fixtures, additions, and other improvements upon the premises, as well those thereupon at the beginning of the lease as those afterwards erected or put thereon during the said demised term, to become and remain greatly out of repair, and to deteriorate and depreciate in conditional value. It was further alleged that, at the expiration of the lease, the defendant failed to surrender the premises in good order and condition, and failed to leave the ground smooth and regular, but that the grounds were left greatly out of repair and uneven, and the facing upon the yards broken and worn out; also that the defendant caused or permitted certain buildings, sheds, pits, lumber, machines, and other property belonging to the plaintiff to be removed and taken away from the premises;

that the defendant wholly failed, as required by the said extensions of the lease, to put up, maintain, and leave upon the premises a steam-engine of sufficient horse-power and capacity, with suitable buildings and fixtures, and all machinery required therefor. Then it was alleged that, by reason of the failure of the defendant to keep and perform the covenants in the leases, the plaintiff sustained damage to a large amount.

Most of the allegations in the complaint respecting the damage and negligence and default of the defendant were put in issue. The action was tried before a referee, and he has found all the material facts in favor of the plaintiff substantially as they were alleged in the complaint, and found that there was due to the plaintiff from the defendant $15,327.43, which includes interest. The principal contention arose upon the trial and on the argument before us respecting the construction to be placed upon the leases, it being the contention of the plaintiff that the covenants in the lease on the part of the defendant to occupy and maintain at its own cost and expense a proper and substantial brick-yard upon the whole of the demised premises meant one yard covering the whole premises; that it also meant every appliance necessary to a fully-equipped brick-yard; and that it was the intention of the plaintiff to require the defendant to furnish and leave upon the premises a fully-equipped brick-yard; and that the covenant to maintain, keep, and repair required the defendant to construct, keep, maintain, and leave one brick-yard upon the premises; and further, that the extension agreement, called the "second lease," required the defendant to put up, erect, and maintain on said premises a steam-engine for the manufacture of brick thereon, of sufficient horse-power and capacity for the purpose thereof, with suitable buildings and fixtures and all machinery required therefor, called for one engine of sufficient power to run a brick-yard covering the whole property. It was the contention of the plaintiff also that the covenant of the lease that all buildings, sheds, docks, pits, and other improvements on the premises at the commencement of the lease belongs to the lessor, or thereafter erected thereon, should be kept in good order and condition, and left on the premises, and become the property of the plaintiff. The referee took that view of the law, and tried and decided the cause upon that theory, and our conclusion is the same. It is to be noted that this covenant differs from the ordinary covenants in a lease to leave the demised premises in good order and condition at the end of the lease. It is an absolute, unqualified covenant and agreement to leave the premises, with the docks, buildings, pits, improvements, and fixtures, in good order and condition at the expiration of the term fixed in the lease. The property was to be preserved and handed over to the plaintiff in good order. The defendant, on this appeal, challenged also the measure of damages adopted by the referee; but it is to be borne in mind that the parties took pains to express in the writing that it was a part of the consideration of the lease that the defendant should keep the property from deterioration, and leave all the additions and improvements upon the same; and the second lease provided that the whole were to become the absolute property of the plaintiff. For a breach of this covenant the plaintiff was entitled to recover the damages sustained thereby, which must be considered the reasonable cost and expense of replacing everything which was to be left upon the premises by the defendant, and we find that the referee has been careful to keep within bounds in all his valuations, and we think his measure of damage was as favorable to the defendant as could be expected. Our conclusion is that the judgment should be affirmed, with costs. All concur.